UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| HUBERT LEWIS HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:24CV1 RHH |
| | ) | |
| GREGORY HANCOCK[1], | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Hubert Lewis Harris' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is fully briefed and ready for disposition.

On August 9, 2018, a jury in the Circuit Court of the City of St. Louis, Missouri, found Petitioner guilty of one count of murder in the first degree (Count I), and one count of armed criminal action (Count II). On December 14, 2018, Petitioner was sentenced as a persistent offender to consecutive sentences of life imprisonment without parole on Count I and 100 years' imprisonment on Count II. The Missouri Court of Appeals affirmed the convictions and sentences. *State v. Harris*, 604 S.W.3d 882 (Mo. App. 2020). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of post-conviction relief. *Harris v. State*, 666 S.W.3d 263 (Mo. App. 2023).

1 The Court substitutes as Respondent Gregory Hancock, the warden of the Southeast Correctional Center ("SECC") where Petitioner is presently incarcerated, in lieu of the person who was the warden of SECC when Petitioner filed this habeas proceeding. *See* Federal Rule of Civil Procedure 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Court.

Petitioner is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri. In the instant petition for writ of habeas corpus, Petitioner raises the following three claims for relief:

(1) That the trial court erred in denying Petitioner's motion for a mistrial, after the prosecutor allegedly showed an edited video to the jury outside the presence of the judge, Petitioner and defense counsel;

(2) That Petitioner received ineffective assistance of trial counsel, in that trial counsel failed to investigate evidence of Petitioner's mental defect; and

(3) That Petitioner received ineffective assistance of appellate counsel, in that appellate counsel failed to assert a claim of error regarding the trial court's denial of Petitioner's motion for a continuance due to newly discovered evidence.

The Court will address the claims in turn.

## **DISCUSSION**

### **I. Ground 1**

As stated above, in Ground 1 of his petition Petitioner asserts the trial court erred in denying Petitioner's motion for a mistrial, after the prosecutor allegedly showed an edited video to the jury outside the presence of the judge, Petitioner and defense counsel. (§ 2254 Petition, PP. 4-5). Specifically, Petitioner asserts the "prosecution played portions of a video it selected to a deliberating jury without the presence of the Trial Judge, defendant or trial counsel." (*Id.*, P. 4).

Petitioner raised this claim on direct appeal from his convictions. The Missouri Court of Appeals first summarized the evidence presented at trial as follows:

> The State charged Harris as a prior and persistent offender with one count of the class A felony of murder in the first degree, in violation of Section 565.020,[2] and one count of armed criminal action, in violation of Section 571.015. The charges stemmed from an incident on May 20, 2016, where Harris, along with two co-defendants, shot and killed Robert Piffins behind a gas station in Saint Louis City. Harris does not challenge the sufficiency of the evidence supporting his convictions, and we therefore decline to summarize the evidence adduced at trial except as

2 All statutory references are to RSMo. (2016), unless otherwise indicated.

relevant to Harris's point on appeal.

During trial the State showed three video clips, approximately one minute each, from the gas station's surveillance videos of the incident. These clips were unedited portions of approximately seven hours of video surveillance from the gas station's seven different camera angles. The DVD of the full seven hours of video surveillance was admitted at trial, over defense counsel's objection as to foundation.

The jury began deliberations at 12:20 P.M. on August 9, 2019, and indicated a question fifteen minutes later.[3] The question stated "[w]e would like to see the surveillance videos." The trial judge was not present at the time of the jury question and was unavailable by telephone. The bailiff alerted the State and defense counsel to the jury's question. The prosecutor was near the courtroom at the time and prepared the first of the three video clips shown at trial to show the jury in the courtroom. Defense counsel arrived shortly thereafter and was instructed by the bailiff not to enter the courtroom because the jury was viewing the first video clip. The prosecutor proceeded to arrange the two remaining video clips for viewing by the jury while defense counsel was present in the courtroom. The jury returned to the jury room while the prosecutor prepared each video clip for viewing, and neither party was present in the courtroom while the jury watched the clips. After the jury watched the three video clips, defense counsel succeeded in contacting the trial judge by telephone. During that telephone conversation, the trial judge offered to show the jury the full seven hours of video on the DVD admitted at trial, seemingly in response to defense counsel's assertion that such an action would be the proper way to respond to the jury's question.

The trial judge held an on-the-record discussion with both parties approximately two hours after the jury's question was received. During this discussion the prosecutor confirmed he did not show the jury anything other than what was shown during trial. The prosecutor also stated he was not present while the jury watched the video clips and did not communicate with the jury. Defense counsel objected to the manner in which the video clips were shown, in that they were cued up to specific portions of three camera angles of the video surveillance, and maintained that the full seven hour DVD should have been shown to the jury in response to its question. The trial judge again offered to show the full DVD to the jury. Defense counsel declined this offer and asked for a mistrial, arguing that the prejudice resulting from the way in which the jury's question was answered could not be cured. The trial judge refused to grant a mistrial, finding no prejudice from the situation because the jury only saw what was previously shown in trial and defense counsel could have shown the full seven hours of video during trial, but declined to do so.

After discussion with both parties, the trial court sent the jury a note in response

---

3 The response to the jury's question occurred off the record. We base our recitation of these events from the on-the-record discussion held among the trial court, the State, and defense counsel later that day.

to its question, stating:

> Video provided. You have been shown the clips of the video that were shown to you in trial. The DVD admitted into evidence, Exhibit #0, contains a total of 7 (seven) different camera angles, which totaled approximately one hour each for a total of 7 (seven) hours of which the clips shown were a part of. You are certainly free to view the exhibit in its entirety or any portion thereof.

The jury found Harris guilty of one count of murder in the first degree and one count of armed criminal action, for which the trial court sentenced him to consecutive terms of life without the possibility of parole and one hundred years in the Missouri Department of Corrections.

(Resp. Exh. G, PP. 2-4). The court continued to deny Petitioner's claim as follows:

> In his sole point on appeal, Harris argues the trial court erred in denying his motion for a mistrial after the State unilaterally determined how to respond to a jury question and showed portions of a surveillance video to the jury outside the presence of the trial judge, resulting in prejudice to Harris. We disagree.
>
> Unauthorized contact with a jury can result in an error. *State v. White*, 138 S.W.3d 783, 786 (Mo. App. W.D. 2004). For instance, under Section 547.020, the trial court may grant a new trial for enumerated errors pertaining to the jury, including "[w]hen the jury has received any evidence, papers or documents, not authorized by the court" or in the case of "any misconduct tending to prevent a fair and due consideration of the case." Section 547.020(1), (2). The primary purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence. *U.S. v. Olano*, 507 U.S. 725, 737-38 (1993); *State v. Herndon*, 224 S.W.3d 97, 101 (Mo. App. W.D. 2007). Here, the State played portions of the video surveillance to the jury without contact with or authorization from the trial court until after-the-fact, which was improper. This unauthorized contact with the jury undoubtedly was an error.
>
> Harris contends the trial judge's absence when the jury's question was received and answered constituted structural error, which is reversible error per se. Structural errors are "defects in the constitution of the trial mechanism" that affect the "entire conduct of the trial from beginning to end" and "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). The United States Supreme Court has not yet decided whether a trial judge's absence from the bench constitutes structural error or simply trial error, subject to harmless-error review. Federal and state courts that have decided the issue are split. *See, e.g., U.S. v. Solon*, 596 F.3d 1206, 1211 (10th Cir. 2010); *Kansas v. Johnson*, 453 P.3d 281, 285-86 (Kan. 2019). Given that the United State Supreme Court in *Neder v. U.S.*, 527 U.S. 1, 8 (1999), has deemed errors to be structural only in a "very limited class of cases", and we are not bound by federal decisions finding structural error in similar circumstances, we

decline to add the error involved here to this limited list.[4] As such, we must determine whether this error was harmless beyond a reasonable doubt. *State v. Ramirez*, 447 S.W.3d 792, 797 (Mo. App. W.D. 2014). Under this test, the State can prove the error was harmless if it did not contribute to the verdict obtained. *Id.* This does not mean that the error had no possible influence on the jury's verdict; rather, harmless error exists on a continuum "along which various factors must be balanced and weighed" by the trial court. *Id.* at 797-98. Such a test aligns with our Missouri precedent regarding improper communications with jurors, in which prejudice is presumed and the State bears the burden of showing the communication did not improperly influence the jury. *White*, 138 S.W.3d at 786; *State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984).

The trial court has broad discretion in finding an error to be harmless, and in determining whether to grant a mistrial. *White*, 138 S.W.3d at 786; *State v. Harris*, 949 S.W.2d 102, 105 (Mo. App. W.D. 1997). Appellate review of a trial court's refusal to grant a mistrial is for an abuse of this discretion. *Harris*, 949 S.W.2d at 105. A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which prejudice to the defendant cannot otherwise be removed. *Id.* at 104. This decision is typically left to the discretion of the trial court, as it is in the best position to determine whether the incident had a prejudicial effect on the jury. *Id.* at 105. A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration. *White*, 138 S.W.3d at 786.

We find the error here to be harmless in that it did not improperly influence the jury or contribute to the verdict obtained. The three video clips shown in response to the jury question were all previously shown to the jury during trial and were admitted into evidence by the trial judge. One additional showing of the videos did not improperly influence the jury or prejudice defendant given the facts already in evidence. *Cf. State v. Evans*, 639 S.W.2d 792, 794 (Mo. banc 1982) (finding no prejudice from playing of defendant's audio confession to deliberating jury where audio confession tape admitted into evidence but not previously played at trial); *State v. Hogan*, 748 S.W.2d 766, 769 (Mo. App. E.D. 1988) (finding no error in allowing jury to hear defendant's taped confession during deliberation where confession had previously been played during trial).

Additionally, the playing of the video clips during the trial judge's absence did not result in any improper or unauthorized interaction with the jury that may have contributed to the verdict. There was no interaction here between either party and the deliberating jury because neither defense counsel nor the State was present in the

4 The Supreme Court of the United States has found only a limited number of structural errors: (1) total deprivation of the right to counsel at trial, (2) a judge who was not impartial, (3) unlawful exclusion of members of the defendant's race from a grand jury, (4) the right of self-representation at trial, and (5) the right to public trial. *Neder v. U.S.*, 527 U.S. 1, 8 (1999).

courtroom during the time the jury watched the video clips.[5] Further, the jury's question was answered by the trial judge in its official note sent to the jury. The jurors were not aware that the parties answered the jury question in the first instance, as the jury did not have any interaction with the parties, as discussed above. Therefore, there is no possibility that the judge's absence created any impression in the minds of the jury that resulted in detriment to the defendant or benefit to the State. *See State v. Arguello*, 873 N.W.2d 490, 493 (S.D. 2015) (noting possible significant effects of trial judge's absence during trial on jury). Permitting the jury to view the video clips once during its deliberations did not unduly emphasize the evidence or impermissibly bolster the State's case. *See State v. Anthony*, 837 S.W.2d 941, 945 (Mo. App. E.D. 1992) (finding no error in playing audio recording of undercover narcotics deal where recording had been played in open court and was only played once for deliberating jury). The jury was permitted to view the full surveillance DVD and other exhibits during its deliberations, thus diminishing any emphasis on the specific video clips. *See id.* (also noting that jury's access to other exhibits diminished any emphasis on audio recording).

Moreover, defense counsel was present when the State arranged two of the three video clips for playback. Defense counsel did nothing to prevent the State from proceeding until the trial court could issue a ruling on the matter. Similarly, defense counsel maintains that he believes the proper response to the jury's question should have been a showing of the entire seven hours of video surveillance on the DVD admitted in evidence. However, defense counsel declined this precise remedy when the trial court offered it multiple times. A party cannot complain on appeal of error in which, by his own conduct at trial, he joined in or acquiesced to. *State v. Barnes*, 583 S.W.3d 458, 462 (Mo. App. S.D. 2019).

Given the above circumstances specific to this case, the error resulting from the trial court's absence was harmless and cannot be said to have contributed to the jury's verdict. The prosecutor's conduct in responding to the jury's question by showing portions of a trial exhibit to the jury without the initial authorization of the trial court, and the fact that a record was not made of the incident until two hours after the question was received, were egregious incidents. However, we cannot say the trial court abused its discretion in finding such error harmless because the error did not contribute to the verdict obtained.

Point I is denied.

*Id.* at 4-8.

With respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in

---

5 *State v. White*, 138 S.W.3d 783 (Mo. App. W.D. 2004), cited by Harris in support of his argument, is thus inapposite. In *White*, the court found there was prejudice because the law clerk was in the deliberation room with the jury, unlike here where no one was in contact with the jury while in deliberation. Both parties were outside the courtroom when the jury

pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As noted above, Petitioner claims the trial court erred in denying his motion for a mistrial, because the prosecution showed surveillance footage to the jury outside of the presence of the trial court and counsel. Petitioner asserts he was unfairly prejudiced, and this incident constituted improper unauthorized conduct resulting in error. He argues "a judge's absence during a criminal trial, including court proceedings after a jury begins deliberations, is error of a Constitutional magnitude", and as such this incident is a "reasonably Constitutional structural error." (ECF No. 14, P. 9).

As recognized by the Supreme Court, where a defendant has counsel and was tried by an impartial adjudicator, there is a strong presumption that any constitutional errors that may have occurred are subject to harmless-error review. *Neder v. United States*, 527 U.S. 1, 8 (1999). The Supreme Court has also recognized that some errors are "defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself", and thus warrant reversal *Johnson v. United States*, 520 U.S. 461, 468 (1997) (internal quotation marks and citation omitted). Structural errors subject to automatic reversal have been recognized by the Supreme Court in only a limited set of circumstances, however, including the complete denial of counsel at trial, the

---

viewed the surveillance clips.

denial of self-representation at trial, the denial of a public trial, the existence of a biased trial judge, racial discrimination in the selection of a grand jury, and the failure to convey to a jury that guilt must be proved beyond a reasonable doubt. *Neder*, 527 U.S. at 8.

In Petitioner's case, the appellate court found that although the prosecution's unauthorized contact with the jury constituted error, it was not structural. (Resp. Exh. G, PP. 4-5). The court noted that "[s]tructural errors are defects in the constitution of the trial mechanism that affect the entire conduct of the trial from beginning to end and the framework within which the trial proceeds, rather than simply an error in the trial process itself." (*Id.*, P. 5 (internal quotation marks and citation omitted)). The court held the error here was not structural, and thus was subject only to harmless error review. (*Id.*, PP. 5-6). *See Neder*, 527 U.S. at 9 ("Unlike such defects as the complete deprivation of counsel or trial before a biased judge, [the error at issue here] does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.").

The appellate court continued to find the error was harmless, as "it did not improperly influence the jury or contribute to the verdict obtained." (Resp. Exh. G, P. 6). As support, the court noted the video clips shown were the same ones previously shown to the jury during trial, and it was undisputed there was no interaction between the prosecution and the deliberating jury. (*Id.*, PP. 6-7). Furthermore, the court noted defense counsel was present when two of the three video clips were prepared for playback, and did not object or insist that the prosecution wait until the trial judge ruled on the matter. (*Id.*, P. 8). Finally, the court noted that although defense counsel maintained the proper response to the jury question would have been a showing of the entirety of the video surveillance, he declined the remedy when the trial court offered. (*Id.*, P. 8).

Upon consideration of the foregoing, this Court holds the Missouri State court's ruling was neither contrary to federal law, nor an unreasonable determination of the facts in light of the

evidence presented The decision of the Missouri court thus is entitled to deference, and Ground 1 is denied.

**II. Ground 2**

In Ground 2 of his petition Petitioner asserts that he received ineffective assistance of trial counsel, in that trial counsel failed to investigate evidence of Petitioner's mental defect. (§ 2254 Petition, PP. 6-7). Specifically, Petitioner complains that because he previously was enrolled in treatment and received social security benefits, trial counsel could have developed a defense of diminished capacity. (*Id.*, P. 6). Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

CONCLUSIONS OF LAW

> 1. Claims of ineffective assistance of counsel in post-conviction-relief cases are guided by the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687 (1984). McFadden v. State, 619 S.W.3d 434, 445 (Mo. banc 2020). To be entitled to post-conviction relief, a Movant must show by a preponderance of the evidence that (1) his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he was prejudiced by that failure. Id. "To satisfy the performance prong, a Movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective by showing specific acts or omissions of counsel that, in light of all circumstances, fell outside the wide range of professional competent assistance." Voss v. State, 570 S.W.3d 184, 193 (Mo. App. E.D. 2019) (internal quotation marks omitted). "To satisfy the prejudice prong of the Strickland test, a Movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal quotation marks omitted). A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)….
>
> 2. Movant claims trial counsel failed to investigate the existence and extent of Movant's mental disease or defect. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "[T]rial counsel has a duty to investigate all aspects of the defendant's case, including reviewing the discovery in the case, in order to determine what defenses to present, what witnesses to call, and other matters of trial strategy." Anderson v. State, 66 S.W.3d 770, 776 (Mo. App. W.D. 2002).

> "To succeed on his claim of ineffective assistance of counsel for failure to investigate, the [movant] was required to specifically allege and prove what information his attorney failed to discover, that a reasonable investigation would have revealed and how the information would have aided his position." Id. (internal quotation marks omitted).
>
> At the evidentiary hearing, Movant introduced medical records from the Social Security Administration detailing Movant's mental disease and defect. See Movant Harris's Exhibit #1. These records do not support Movant's claim. In fact, the Social Security Administration decision, Movant Harris's Exhibit #1, is unfavorable to Movant and further that claimant's disability ended on May 1, 2008 and the claimant has not become disabled again since that date. (Administrative Law Judge Robert G. O'Blennis and his findings and decision of December 16, 2009). Although there is an indication that Movant Harris suffers from some mental illness, specifically Attention Deficit Disorder and Personality Disorder, there is no evidence to support Movant's claim of mental disease or defect or other mental disability. Further, there was no indication of a mental disease or defect to counsel prior to the commencing of this trial and voir dire. There is no evidence from any other witness. Movant and trial counsel testified on behalf of this claim. The Court finds both to be not credible. Movant's counsel's attempt to fall on the sword is frankly disturbing to this Court. Movant must show the existence of a factual basis indicating that his mental condition was questionable, which should have caused his attorney to initiate an independent investigation of his mental state. Such an investigation is not indicated where a defendant has the present ability to consult with his attorney with rationality and to understand the proceeding against him. Holman v. State, 88 S.W.3d 105 (Mo. App. E.D. 2002); State v. Richardson, 923 S.W.2d 301, 323 (Mo. banc 1996). The evidence indicated that Movant's counsel was informed of possible mental issues at the beginning of voir dire. Prior to that time there was no indication either from other sources or the Movant that he may have had pre-existing mental issues nor did trial counsel indicate that the Movant had any issues consulting with counsel or understanding the proceeding. The evidence presented belies any such issue. The Court finds that there is no credible evidence concerning this claim and the claim is therefore denied. Further, the Movant Harris in a plethora of correspondences with this Court indicates his involvement and certainly contradicts any issue of mental illness or concern.

(Resp. Exh. L, PP. 4-7). Movant advanced the claim on appeal from the denial of his 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> A claim of ineffective assistance of counsel requires the movant to show by a preponderance of the evidence that counsel's deficient performance resulted in prejudice. *Anderson v. State*, 564 S.W.3d 592, 600 (Mo. banc 2018). Specifically,

the movant must show: "(1) that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) that counsel's deficient performance actually prejudiced the movant." *McLemore*, 635 S.W.3d at 559 (internal quotation omitted).

To show deficient performance, the movant "must overcome the strong presumption" counsel provided reasonable and effective representation. *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019). In addition, the failure to raise a non-meritorious argument on appeal will not support a claim of ineffective assistance of counsel. *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007). In order to satisfy the prejudice prong, the movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hefley*, 626 S.W.3d at 249. If the movant fails to establish either deficient performance or prejudice, "the claim of ineffective assistance must fail." *Moore v. State*, 659 S.W.3d 635, 639 (Mo. App. E.D. 2023) (internal quotation omitted).

Point I

Movant asserts the motion court clearly erred by denying his claim trial counsel was ineffective for failing to investigate whether he had a mental disease or defect to support a diminished capacity defense. Diminished capacity requires showing a "mental disease or defect" which negates the required culpable mental state for the crime charged. Section 552.015.2(8), RSMo 2000; *see also State v. Walther*, 581 S.W.3d 702, 707 (Mo. App. E.D. 2019). A finding of diminished capacity does not preclude criminal liability. To the contrary, diminished capacity "contemplates full responsibility, not partial, but only for the crime actually committed." *State v. Walkup*, 220 S.W.3d 748, 754 (Mo. banc 2007) (internal quotation omitted). Movant argues additional investigation would have resulted in an independent psychological examination that "could have formed an objective, scientific basis" for a diminished capacity defense negating the deliberation element of first-degree murder.[6]

The right to effective assistance of counsel does not require trial counsel to devote his or her limited resources to an investigation of the defendant's mental health in every case. *Zink v. State*, 278 S.W.3d 170, 181 (Mo. banc 2009). Rather, counsel has a duty to investigate only if "there is some suggestion that the defendant is mentally unstable." *Nelson v. State*, 372 S.W.3d 892, 895 (Mo. App. E.D. 2012); *see also Chapman v. State*, 506 S.W.2d 393, 395 (Mo. 1974) (explaining counsel has a duty to investigate when there is "some warning sign or suggestion of mental aberration"). Thus, there is no duty to conduct a mental health investigation when the defendant "appears to have the present ability to consult rationally with the

---

6 Harris also claims additional investigation would have led to the discovery of mitigation evidence to facilitate plea negotiations or to support a reduced sentence. Even if this claim was meritorious it is waived because it was not alleged in the amended motion. *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012).

attorney and understand the court proceedings." *Clayton v. State*, 63 S.W.3d 201, 209 (Mo. banc 2001).

This legal framework requires Movant to specifically allege and prove "the existence of a factual basis indicating a questionable mental condition that should have caused his attorney to initiate an independent investigation of [his] mental state." *State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997) (internal quotation omitted). Additionally, he must allege and prove the information a reasonable investigation would have revealed and how that information would have aided his defense. *Anderson v. State*, 66 S.W.3d 770, 776 (Mo. App. W.D. 2002).

At the evidentiary hearing, Movant testified he informed trial counsel of a childhood diagnosis of schizophrenia and attention deficit disorder and that he had been prescribed various psychiatric medications. Trial counsel testified that while he was aware Movant had participated in a drug court treatment program, he first learned of the alleged mental health issues following *voir dire*, when Movant's mother told him her son suffered from schizophrenia and bipolar disorder. However, the motion court specifically found the testimony from Movant and trial counsel was "not credible," and this Court defers to the motion court's credibility determinations. *Zink*, 278 S.W.3d at 192. Consequently, their testimony does not establish trial counsel had a reasonable basis to suspect Movant suffered from a mental health issue sufficient to invoke his duty to conduct a mental health investigation.

Movant also introduced Social Security Administration records to support his claim. Contrary to any assertion Movant suffered from a mental disease or defect sufficient to support a viable diminished capacity defense, those records show an administrative law judge (ALJ) terminated Movant's disability benefits based on a finding that although he had attention deficit disorder and personality disorder, he was no longer disabled as of May 1, 2008. This finding was based on a March 27, 2008, psychological examination diagnosing Movant with attention deficit disorder, oppositional defiance disorder, and borderline intellectual functioning. The psychologist concluded Movant's mental health issues caused "antisocial behaviors" and "moderate difficulty" in social, occupational, and school settings, which were limiting but not disabling.

Critically, neither the Social Security records nor any other credible evidence in the record shows Movant suffered from schizophrenia or bipolar disorder as alleged in the amended motion. Moreover, Movant points to no fact undermining the motion court's finding that his participation in his defense belies any claim there were sufficient indicia of mental illness to invoke trial counsel's obligation to further investigate his mental health status. On this record, the motion court did not clearly err by concluding there was "no credible evidence" supporting Movant's claim. Movant, therefore, did not show trial counsel's performance was objectively unreasonable under the circumstances. *Shockley*, 579 S.W.3d at 892.

Movant's failure to show deficient performance is a sufficient basis to affirm the motion court's judgment. *Moore*, 659 S.W.3d at 639. However, even if trial

counsel was deficient for failing to conduct a mental health investigation, the record unequivocally demonstrates that Movant was not prejudiced. In fact, there is no credible evidence substantiating his allegations of schizophrenia and bipolar disorder which leaves only the motion court's findings of attention-deficit and personality disorders. As established, the Social Security records show that eight years prior to the murder, Movant's personality disorders yielded "antisocial behaviors" causing "moderate difficulty" in adapting his conduct to social, occupational, and school settings. As the motion court correctly concluded, this evidence is insufficient to support a diminished capacity defense.

In relevant part, Section 552.010 provides:

> The terms "mental disease or defect" include congenital and traumatic mental conditions as well as disease. ***They do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct***, whether or not such abnormality may be included under mental illness, mental disease or defect in some classifications of mental abnormality or disorder.

(Emphasis added). While the term "mental disease or defect" is not "intended to designate any specific form . . . or medical classifications of mental disease[,]" *State v. Garrett*, 391 S.W.2d 235, 239 (Mo. 1965),[7] the statutory definition expressly excludes disorders manifesting only as "antisocial conduct." This exclusion is fully consistent with the concept of diminished capacity, which focuses not on the defendant's conduct, but on the defendant's state of mind; namely, whether a mental disease or defect prevented formation of the culpable mental state for the charged offense. *See Walther*, 581 S.W.3d at 708. Thus, Missouri courts have consistently held personality disorders are typically insufficient to support a diminished capacity defense. *See e.g., Walther*, 581 S.W.3d at 709 (holding evidence of "personality disorder" was not sufficient to show a mental disease or defect warranting a diminished capacity instruction). *See also Zink*, 278 S.W.3d at 182 (noting that when "personality disorders do not affect cognitive abilities, their mitigating value is doubtful"); *State v. Nash*, 972 S.W.2d 479, 482 (Mo. App. W.D. 1998) (noting personality disorders "are not considered mental diseases or defects under Chapter 552"); *State v. Reed*, 816 S.W.2d 919, 924 (Mo. App. E.D. 1991) (observing the evidence "revealed that defendant suffers from a personality disorder, but has no mental disease or defect").

In this case, the general rule applies because as established, there is no credible evidence showing Movant was diagnosed with any mental disease or defect, including schizophrenia or bipolar disorder as alleged in his amended motion. Moreover, the record is devoid of evidence showing Movant's attention or personality disorders rise to the level of a "mental disease or defect" negating his

---

7 In *State v. Anderson*, 515 S.W.2d 534, 540 (Mo. banc 1974), the Court disapproved of other aspects of *Garrett* unrelated to the observation the term "mental disease or defect" is not limited to certain diagnostic nomenclature.

> ability to deliberate before he fought with Victim and fired the fatal shot. The Social Security records Movant introduced expressly conclude his personality disorder resulted in "antisocial behaviors" or conduct, which is a type of conduct specifically excluded from the statutory definition of a "mental disease or defect." Therefore, even if trial counsel had investigated further, Movant has not shown a reasonable probability that the results of an investigation would have yielded a viable diminished capacity defense.
>
> Movant failed to show either element necessary to prove ineffective assistance of counsel. The motion court did not clearly err by denying relief on Movant's claim. Point I is denied.

(Resp. Exh. O, PP. 3-8).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon consideration the Court finds that with this claim, Petitioner fails to establish either prong of the *Strickland* test. The Missouri courts found Petitioner failed to introduce evidence that he suffered from a mental disease or defect in the first instance, or that his trial counsel knew about said defect but failed to investigate. Specifically, the courts noted that while Petitioner introduced medical records from the Social Security Administration, the records showed he suffered from

Attention Deficit Disorder and Personality Disorder, neither of which constitutes a mental disease or defect under Missouri law.[8] The courts further found no credible evidence suggesting Petitioner's counsel learned of the alleged defect prior to the commencement of trial.

Upon consideration of the record, this Court agrees with the Missouri courts that Petitioner fails to demonstrate deficient performance on the part of trial counsel. Furthermore, Petitioner cannot demonstrate the requisite prejudice, as the evidence does not establish he suffered from a mental disease or defect at the time of his crime. Thus there exists no reasonable probability that, but for trial counsel's alleged error, the outcome of Petitioner's trial would have been different. Accordingly, Ground 2 is denied.

## III. Ground 3

As stated above, in Ground 3 of his petition Petitioner asserts he received ineffective assistance of appellate counsel, in that appellate counsel failed to assert a claim of error regarding the trial court's denial of Petitioner's motion for a continuance due to newly discovered evidence. (§ 2254 Petition, PP. 7-8). Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> CONCLUSIONS OF LAW
>
> 1. ….“The standard for evaluating a claim of ineffective assistance of appellate counsel is the same as the standard for evaluating a claim of ineffective assistance of trial counsel.” Jarrett v. State, 572 S.W. 3d 143, 148 (Mo. App. S.D. 2019). See also Hosier v. State, 593 S.W.3d 75, 87 (Mo. banc 2019). “To prevail on a claim of ineffective assistance of appellate counsel, the Movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it.” Anderson v. State, 564 S.W.2d 592, 617 (Mo. banc 2018). “Additionally, the Movant must prove, if counsel had raised the claims there is a reasonable probability the outcome of the appeal would have been different.” Id. (internal quotation marks omitted)….

8 The court further noted the Social Security Administration determined Petitioner's disability ended on May 1, 2008, over eight years before the crime at issue here.

> Movant next claims that appellate counsel failed to assert a claim of error regarding the trial court's denial of his motion for a continuance due to newly discovered evidence. "The decision to grant or deny a motion for continuance is within the sound discretion of the trial court." State v. Litherland, 477 S.W.3d 156, 163 (Mo. App. E.D. 2015) (citing State v. Salter, 250 S.W.3d 705, 712 (Mo. banc 2008)). Whether a denial of a motion for continuance constitutes reversible error depends on the circumstances of each case. Id. "A trial court's decision in denying a motion for a continuance will be reversed only if there is a strong showing that the trial court abused its discretion and that prejudice resulted from the denial of the motion." Id. "An abuse of discretion occurs when the trial court's ruling was so illogical, arbitrary, and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Smith, 491 S.W.3d 286, 297 (Mo. App. E.D. 2016) (internal quotation marks omitted). Movant has presented no evidence to support his claim which is purely speculative and this Court finds there is no merit to this claim. The record is clear that the Court gave counsel time to investigate this matter and there was no basis or support in the record regarding the Movant's mental disease and defect for this request. This claim is therefore denied.

(Resp. Exh. L, PP. 5, 7-8). Movant advanced the claim on appeal from the denial of his 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> Point II
>
> Movant asserts the motion court clearly erred by denying his claim appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to continue the trial due to newly discovered evidence. He argues that if appellate counsel had raised the issue on appeal, this Court would have held the trial court abused its discretion and reversed the judgment.
>
> To show appellate counsel's performance was deficient, the "movant must overcome the strong presumption that appellate counsel provided adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Tate v. State*, 461 S.W.3d 15, 22 (Mo. App. E.D. 2015). The "decision on a motion to grant a continuance lies within the sound discretion of the trial court." *Williams v. State*, 168 S.W.3d 433, 444 (Mo. banc 2005). Therefore, to show the trial court abused its discretion, appellate counsel must demonstrate the trial court's denial of the continuance is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Carpenter*, 605 S.W.3d 355, 359 (Mo. banc 2020) (internal quotation omitted).
>
> Trial counsel filed the motion on the second day of trial after *voir dire* when Movant's family allegedly informed him that Movant had been diagnosed with bipolar disorder and schizophrenia as a child. In his amended motion for

> postconviction relief, Movant alleged the trial court granted counsel approximately one hour to gather information. He further alleged that during this time, a treatment court probation supervisor informed trial counsel Movant was diagnosed with bipolar disorder and had entered a treatment court program in June 2008 before being terminated from the program in 2009.
>
> Movant has not shown there is any reasonable probability appellate counsel could have successfully appealed from the judgment by claiming the circuit court abused its discretion by denying the motion for continuance. Movant failed to elicit testimony from appellate counsel to rebut the presumption counsel made a reasonable decision to forego this claim. Furthermore, Movant presented no credible evidence he was ever diagnosed with bipolar disorder as alleged in the motion for a continuance. In fact, Movant's Social Security records reflect he was no longer disabled just over six years prior to Victim's murder and was subsequently terminated from the treatment court program in 2009. Nothing in the record supports his claim a continuance would have established a viable diminished capacity defense sufficient to change the outcome of the trial. Thus, there is no reasonable probability that appellate counsel could have successfully argued the trial court abused its discretion by denying his motion for a continuance.
>
> Appellate counsel's decision against raising this non-meritorious claim on appeal was reasonable, did not constitute deficient performance, and did not result in prejudice to Movant. The motion court did not clearly err by denying relief on Movant's claim of ineffective assistance of appellate counsel. Point II is denied.

(Resp. Exh. O, PP. 8-9).

"It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal." *Cole v. Dormire*, No. 4:08CV-0032 HEA TCM, 2011 WL 1258249, at *14 (E.D. Mo. Jan. 20, 2011) (citing *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985); *Douglas v. California,* 372 U.S. 353, 357–58 (1963)). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland v. Washington*, 466 U.S. at 687. *Id.* In other words, Petitioner must show that his appellate attorney's performance fell below the reasonable standard of competence, and that there is a reasonable probability the result would have been different absent this deficient performance. *See Strickland,* 466 U.S. at 687; *Gee v. Groose,* 110 F.3d 1346, 1352 (8th Cir. 1997).

"Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers." *Cole*, 2011 WL 1258249, at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Gee,* 110 F.3d at 1352; *Pollard v. Delo,* 28 F.3d 887, 889 (8th Cir. 1994)). "An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel." *McCord v. Norman*, No. 4:09CV0428 TCM, 2012 WL 1080925, at *16 (E.D. Mo. Mar. 30, 2012) (citations omitted). Thus, "[i]f an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal." *Cole*, 2011 WL 1258249, at *14 (citations omitted).

Upon consideration the Court finds that with this claim, Petitioner fails to demonstrate the requisite prejudice. As noted above, the record indicates Petitioner introduced no competent evidence that he suffered from a mental disease or defect at the time of the crime. To the contrary, medical records from the Social Security Administration show Petitioner suffered from Attention Deficit Disorder and Personality Disorder, neither of which constitutes a mental disease or defect under Missouri law. Therefore, there is no indication that the outcome of Petitioner's trial would have been different had counsel appealed the denial of his motion for a continuance. Ground 3 is denied.[9]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and

9 In light of the above ruling, the Court need not consider whether Petitioner's appellate counsel's performance was constitutionally deficient.

Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this 16th day of October, 2026.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE